Robert Christensen (11497)
Attorney at Law
P.O. Box 389
Kilauea, HI 96754
Tel.: (808) 431-1160
Fax: (808) 538-7579
*rjc.esq@outlook.com*

Prerak Shah (pro hac vice pending)
GIBSON, DUNN & CRUTCHER LLP
811 Main St., Suite 3000
Houston, TX 77002
Tel.: (346) 718-6600
Fax: (346) 718-6620
*PShah@gibsondunn.com*

David J. Hacker (pro hac vice pending)
Jeremiah G. Dys (pro hac vice pending)
Ryan Gardner (pro hac vice pending)
FIRST LIBERTY INSTITUTE
2001 West Plano Parkway
Suite 1600
Plano, TX 75075
Tel.: (972) 941-4444
*DHacker@firstliberty.org*
*JDys@firstliberty.org*
*RGardner@firstliberty.org*

Elizabeth A. Kiernan (pro hac vice pending)
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
Tel.: (214) 698-3100
*EKiernan@gibsondunn.com*

*Attorneys for Plaintiffs Chabad Jewish Center of the Big Island and Rabbi Gerlitzky*
*(Additional Counsel on Signature Page)*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| CHABAD JEWISH CENTER OF THE BIG ISLAND; <br><br> RABBI LEVI GERLITZKY, <br><br>         *Plaintiffs*, <br><br>    v. <br><br> COUNTY OF HAWAIʻI; <br><br> HAWAIʻI COUNTY PLANNING DIRECTOR, ZENDO KERN, <br><br>         *Defendants*. | Civil Action No. 1:24-cv-68 <br><br> **COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MONETARY RELIEF** |

Plaintiffs Chabad Jewish Center of the Big Island and Rabbi Levi Gerlitzky, for their Complaint against Hawaiʻi County and the Hawaiʻi County Planning Director, Zendo Kern, in his individual and official capacities (collectively, "Defendants"), allege, by and through their attorneys, as follows:

## NATURE OF THE ACTION

1.      In this time of great uncertainty and fear for many members of the Jewish community, Defendants attempt to prevent Jewish residents of the Big Island from gathering together for prayer and celebration in accordance with their faith in the home of their Rabbi.  None of the U.S. Constitution, the Hawaiian Constitution, or federal law tolerate such restrictions, and neither can this Court.

2.      The Chabad Jewish Center of the Big Island ("the Center") holds occasional meetings at the home of its Rabbi, Levi Gerlitzky, to serve the local and visiting Jewish community on the Big Island.  For instance, the Center hosts Shabbat meals, prayer gatherings, and holiday celebrations at Rabbi Gerlitzky's home.

3.      Nevertheless, Hawaiʻi County ("the County") has waged a regulatory war on the Center and its Rabbi, demanding that it cease any religious prayers or celebrations out of Rabbi Gerlitzky's home and levying thousands of dollars in fines against the Center.

4.      The County's sole justification for its attempts to prevent Jewish gatherings in the Rabbi's home is a facially unconstitutional zoning ordinance.  For

zoning purposes, the Rabbi's home is in a residential use ("RS") district.  Hawai'i County Code § 25-5-3(a)(9) allows "*[m]eeting facilities*" to operate "in [a] RS district" sans any restriction.  (Emphasis added).  Conversely, Hawai'i County Code § 25-5-3(b)(3) prohibits "[c]hurches, temples and synagogues" from operating in a RS district unless "a use permit is issued for [the] use."  And, critically, use permits are required not only for "[c]hurches, temples and synagogues" themselves but also for the "*meeting facilities* for churches, temples, synagogues and other such institutions[] in RS . . . districts." H.C.C. § 25-2-61(a)(3) (emphasis added).  In other words, in RS districts in Hawai'i County, meeting facilities are permissible as of right *only if they are secular*.  Those provisions constitute a facial violation of the First Amendment's free-exercise clause, the Hawai'i Constitution, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA").

5.      Not only does the County rely on a facially unconstitutional provision, but its enforcement of that provision, through its Planning Director Defendant Kern, has imposed a substantial burden on Plaintiffs' free-exercise rights.  Even though secular and other religious gatherings regularly take place in Rabbi Gerlitzky's neighborhood unmolested, Defendants have unlawfully imposed a substantial burden on Rabbi Gerlitzky and the Center, ordering the Center to pay thousands of dollars in fines for its religious gatherings and denying Rabbi Gerlitzky a permit to host meetings for the Center at his home until he first brings his home up to all

commercial standards—a burden that is not feasible for Rabbi Gerlitzky and the Center to meet.

6.      The Center and Rabbi Gerlitzky seek declaratory relief, injunctive relief, monetary damages, and attorney fees for Defendants' blatant violations of the First Amendment of the United States Constitution, the Hawaiʻi Constitution, and RLUIPA.

## PARTIES

7.      Plaintiff Chabad Jewish Center of the Big Island is a Jewish community group on the Big Island that hosts, among other things, synagogue services, holiday programs, classes, and Shabbat meals.   The Center is a non-profit 501(c)(3) organization financed solely by the contributions of its community and visitors.  The Center has no formal membership requirement.

8.      Plaintiff Levi Gerlitzky is a Jewish Rabbi who currently lives at 75-353 Nani Kailua Drive, in Kailua Kona, Hawaiʻi, a single-family residence sitting on a 0.4 acre lot.  Rabbi Gerlitzky is a full-time employee of the Chabad Jewish Center of the Big Island.

9.      Defendant County of Hawaiʻi is a municipality that is geographically coextensive with the Island of Hawaiʻi.

10.      Defendant Zendo Kern is the duly constituted Planning Director for the County of Hawaiʻi Planning Department.   The Planning Director supervises the

Planning Department and oversees its administration of the Subdivision and Zoning Codes.  Plaintiffs sue Defendant Kern in his official and individual capacities.

## JURISDICTION AND VENUE

11.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331, because Plaintiffs' causes of action arise under the U.S. Constitution and under 42 U.S.C. § 1983, as well as 42 U.S.C. § 2000cc *et seq*.

12.    This action seeks declaratory and equitable relief under the Federal Declaratory Judgment Act of 1934, 28 U.S.C. §§ 2201–02.

13.    The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiffs' claims under the Hawaiʻi Constitution, because those claims are so related to claims within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

14.    Venue is proper in this district under 28 U.S.C. § 1391(b), because all Defendants reside in the District of Hawaiʻi.

## FACTUAL ALLEGATIONS

### Rabbi Gerlitzky Fosters a Jewish Community on the Big Island

15.    Levi Gerlitzky was ordained a Chabad Rabbi in 2014, after attending Rabbinical seminaries in New York, France, and Los Angeles.  Chabad is an Orthodox Jewish Hasidic movement and one of the largest Jewish organizations in the world, known primarily for its outreach activities.  Chabad Rabbis focus their

ministry on creating a Jewish hub for studying, counseling, and facilitating important events in the Jewish life.

16.    Although they are not formally required to be missionaries, Chabad Rabbis often own houses in which they live and invite Jewish community members to properly engage in Jewish traditions in conformity with Jewish law.  There are around five thousand such houses throughout the world, and their communities call them "Chabad Houses."  Chabad Houses have myriad purposes like education, meals, and holiday celebrations.  Unlike synagogues, Chabad Houses don't require membership fees to be part of their community.  And unlike synagogues, Chabad Houses can be the residences of Chabad Rabbis and their families.

17.    Chabad Rabbis direct their outreach particularly at Jewish people who wouldn't otherwise be involved in Jewish religious practice in a community setting. Chabad Rabbis adhere to the practices of Orthodox Judaism.  Their community members, however, need not be Orthodox.  Instead, Chabad Rabbis invite members of the Jewish community to observe Orthodox practices without regard to whether the participants are themselves Orthodox Jews.

18.    Visitors in Chabad houses are asked to follow Orthodox requirements while present.  For instance, even if visitors do not eat kosher food during the week, they eat kosher food while visiting the Chabad House.  Even if visitors drive to the Chabad House during Shabbat or use their phones during Shabbat—when such

activities are traditionally prohibited—they do not use their phones on Shabbat in the Chabad House.  Chabad Rabbis don't encourage non-Orthodox activities outside of their homes, but neither do they excommunicate members of their community who don't routinely observe Orthodox practices.  In this way, Chabad Rabbis enable nonorthodox Jewish visitors to comfortably experience Orthodox Judaism outside the strictures of a traditionally Orthodox community.

19.     Rabbi Gerlitzky is a Chabad Rabbi.  Having first been ordained in 2014, he has been passionate about Jewish outreach, hosting Passover Seders in New York, Toronto, Texas, and South Korea, and encouraging Jewish communities in Louisiana, Mississippi, California, and Nigeria.  And it was while in seminary that Rabbi Gerlitzky began dating Fraida Levin, who had been studying Judaism in California, New York, and Israel.  While dating, the two decided that, if they married, they would open a "Chabad House" together.

20.     And they did just that.  In 2015, Rabbi Gerlitzky married Fraida and began searching for a location to open their Chabad House.  In picking a location, Rabbi Gerlitzky sought a community that didn't have Orthodox Jewish facilities and services readily available so that he could be an ambassador of Judaism to that community.

21.     The Big Island was the perfect place.  Starting in 1975, a pair of Chabad rabbinical students had visited the Hawaiian islands during summer break to serve

Jewish residents and visitors, but no Rabbi started a Chabad House on the Big Island until 2009.  In 2009, Chabad representatives established their first permanent presence on the Big Island.  But in 2017, the prior leadership of the Chabad outreach left the Big Island.

22.    So in 2017, Rabbi Gerlitzky moved his family to the Big Island to serve the local Jewish community with a Chabad outreach.  The Gerlitzkys did their own fundraising and created a 501(c)(3) organization, the Chabad Jewish Center of the Big Island, of which Rabbi Gerlitzky became a full-time employee.  Although the Chabad umbrella organization gave Rabbi Gerlitzky permission to have a Chabad House on the Big Island, the Chabad organization has no control over the Chabad Jewish Center of the Big Island.  Further, the umbrella organization does not assign Rabbis to any given location or pay them a salary.  Instead, Rabbi Gerlitzky runs the Center himself.

23.    Because the Chabad House serves as the "parsonage—housing for clergy," the Center leases it for Rabbi Gerlitzky.  *See* Ex. A.  Indeed, like ministerial housing allowances common among other faith traditions, Rabbi Gerlitzky's home is akin to parsonages many congregations maintain for their clergy for both residential and pastoral functions.  The Hawaiʻi County Code recognizes this designation.  *See* Hawaiʻi County Code § 19-77(a), (b)(3).

7

## The Center Rents Event Spaces for Many Religious Events

24.    The Center doesn't presently own any commercial building that would ordinarily constitute a larger Chabad house.  Instead, to support its ministry, the Center rents office space in the Kona Chamber of Commerce, where Rabbi Gerlitzky conducts most of his office work and meetings.

25.    The Center frequently hosts gatherings in a variety of venues, including schools, hotels, and parks, and reaches out to sick community members in their homes or in hospitals.  Additionally, Rabbi Gerlitzky serves the Jewish community outside his home by officiating weddings, circumcisions, bar mitzvahs, bat mitzvahs, and funerals, and engaging in kosher supervision, distribution of religious articles, prayer groups, private counseling, and study groups in others' homes.

26.    The Center also rents out event spaces for larger religious gatherings, such as Torah celebrations and the annual lighting of a Hanukah menorah.  For instance, the Center's Torah celebration has occurred at the Hawai'i Queen Coffee Garden.  Likewise, the Center's annual menorah lighting has occurred at the Lanihau Shopping Center, Kona Outdoor Circle, and Old Airport Beach.

## The Gerlitzkys Open Their Home for Some Religious Events

27.    Not all Jewish gatherings, prayers, and celebrations, however, can take place in a rented facility.  That's because many venues lack necessary and essential religious accommodations—or aren't located within walking distance for members

who cannot operate a vehicle on Shabbat because of Jewish law.  And for meals, not only must the food be kosher under Jewish law, but the kitchen in which the food is prepared must also be kosher.  The Center and Rabbi Gerlitzky are aware of no commercial facility on the Big Island currently offering a kosher kitchen for food preparation suitable to the community's needs, let alone one within walking distance.  For these kinds of reasons, the Gerlitzkys have generously opened their Chabad Home for these occasions.

28.    For example, to properly serve a kosher meal, one must have a kosher kitchen.  A kosher kitchen must follow the laws of kashrut.  All traces of non-kosher foods must be purged from the kitchen.  Cooking pots that have been used for non-kosher foods must be cleansed through a process known as *hagalah*, which entails waiting 24 hours after being in contact with non-kosher food and then cleaning with boiling water.  Meat and milk must be separated, and separate dishes must be used for milk and meat.  A kitchen sink and counters that were used for non-kosher foods need to be cleaned by (again) waiting 24 hours and then using boiling water; until then, any dishes that come into contact with the sink or counters become unkosher.  Similarly, a sink used for milk cannot come into contact with dishes used for meat and vice versa.  Separate counter spaces must be maintained for preparation of meat and dairy dishes.  Non-kosher ovens must either go through a 24 hour waiting period and a thorough cleaning involving heating to the highest temperature and

blowtorching or a high-temperature self-cleaning cycle, or the foods inside must be double-wrapped completely when in the oven.  All spices and ingredients (even if originally kosher) that have been used in a non-kosher kitchen cannot be used in a kosher kitchen.  Because it requires substantial effort to transform an ordinary kitchen into a kosher kitchen, it could take a group of Jewish men days to do so in a rented event facility.

29.     Rabbi Gerlitzky hosts weekly Shabbat meals in his home.  Shabbat meals bring with them additional logistical challenges.  Driving, using phones, and carrying anything outside a private domain are prohibited.  Cooking is not permissible on Shabbat, so advance preparation is necessary.  Because turning on lights or machines is forbidden, refrigerators must be used with care: the refrigerator can be set to "on" or "off" before Shabbat by using a special Shabbat mode that is sometimes built in or added as an accessory; light bulbs can be unscrewed.  Ovens have a special Shabbat mode that must be used.

30.     Given the sizeable obligations that come with an Orthodox Shabbat meal, moving the celebration outside of Rabbi Gerlitzky's home would be a significant burden.  An added benefit is that many Jews in the community, for their part, have not regularly celebrated a Shabbat meal in a home setting.  Accordingly, Rabbi Gerlitzky invites Jewish community members to his house to experience Shabbat.

31.     Rabbi Gerlitzky also invites members of the Jewish Community into his home for some holidays and other smaller gatherings.  For instance, Rabbi Gerlitzky and the Center host events for Passover, Purim, Yom Kippur, and Hanukkah, among other events.

32.     Typically, about twenty guests come to Rabbi Gerlitzky's home on Friday nights for prayers and a Shabbat meal, and about fifteen come on Saturday mornings for a morning Shabbat service and lunch.  Rabbi Gerlitzky and the Center's other small events, like Hebrew classes, usually have fewer than ten guests.  The largest gatherings were for the annual Passover celebration and involved a maximum of about ninety guests.  But usually twenty-five to sixty visitors attend the Center's holiday gatherings.

33.     When Rabbi Gerlitzky does host guests, the guests either walk to his home (in accordance with Orthodox practices) or drive.  When guests drive, they park on the public shoulder of Nani Kailua Drive—a shoulder that is two-cars wide in both directions.  Nani Kailua Drive is a two-way asphalt street, and it looks like this outside the home:



34.     In hosting religious events, the Gerlitzkys strive to contribute to the quiet, respectful, and friendly atmosphere of their neighborhood.  They ensure their guests are courteous when driving and parking, and that they never block driveways or impede the regular flow of traffic in any way.  The fact that some attendees may arrive on foot, walking instead of driving for religious reasons, further serves this purpose.  Respectful of their neighbors, they keep the noise level low—only occasionally playing or singing music.  Overall, the Gerlitzkys endeavor to both embody and to instill in their guests the spirit of Aloha that characterizes their community.

35.     Rabbi Gerlitzky's opening of his home to his community is no different than his friends or neighbors.  Other homes on Rabbi Gerlitzky's street have hosted large events, for example, 75-275 Nani Kailua Drive has hosted consistently, sometimes with fifteen cars parked outside.  On information and belief, those secular

gatherings have not incurred fines and threats for the homeowners who host the events.  As another example, on information and belief, a member of the community who lives two miles away, in a neighborhood with much less street parking available, received permission—sans any use permit—to host musical events and talks on spirituality in his home (known as the "Pyramid House") when the Planning Department discovered that that neighbor was only accepting donations, not charging admission, for the events.

36.    The Gerlitzkys' Jewish community were afforded the same right and gathered at the Rabbi's home from time to time without incident or complaint for nearly four years.

### The Planning Department Finds the Center in Violation of the County Code

37.    On February 27, 2023, all that changed.  Hawaiʻi County's Planning Department sent a Notice of Complaint to the Center, Rabbi Gerlitzky, and Fraida Levin, indicating that the Planning Department had received a complaint about the Center's use of the Gerlitzkys' property.  Ex. B.  The notice indicated that Rabbi Gerlitzky's home is in a Single Family Residential or "RS-10" district, which allow "[c]hurches, temples and synagogues" to operate only with "a use permit."  Ex. B (citing H.C.C. § 25-5-3(b)).

38.    The notice provided no details about any allegedly violative events on Rabbi Gerlitzky's property and failed to provide any basis for believing that the

Case 1:24-cv-00068-DKW-WRP   Document 1   Filed 02/13/24   Page 15 of 33   PageID.15

Center operated a synagogue out of Rabbi Gerlitzky's residence.  Indeed, simply hosting religious prayer celebrations at the residence does not transmogrify it into a synagogue, as that term is understood within the Jewish faith tradition, any more than hosting a home Bible study or Christmas party transforms a Christian's residence into a Church.  It is also not a commercial undertaking, as Rabbi Gerlitzky and the Center charge no membership fees and accept only donations.  Everything in the home is for the Gerlitzkys' personal use—just as any parsonage would be.

39.    The County's notice was dated February 1 but the mailed notice was apparently returned to sender; Rabbi Gerlitzky never received it.  The County then sent the notice via email on February 27.  That email was the first that Rabbi Gerlitzky and the Center learned of the complaint.  Despite the problems in notifying Rabbi Gerlitzky and the Center of the alleged violation, the notice nevertheless demanded that Rabbi Gerlitzky respond by March 1, 2023.  Ex. B.  In a word, the Center and the Gerlitzkys had ***two days to respond***.  Unsurprisingly, the Gerlitzkys and the Center missed that deadline.  But, by March 17, 2023, they sought a 90-day extension to consult with counsel on a response.

40.    But to no avail.  On March 28, 2023, the Planning Department presented the Center with a Notice of Violation dated March 17, 2023—the precise date the Center had requested an extension to respond.  For the first time, the Planning Department pointed to two purportedly violative postings on the Center's

website:  One listed the Gerlitzkys' house as a mailing address for questions or comments, and another listed the Gerlitzkys' house as the location of a Passover Seder.  Based on those two postings the Planning Department found that Rabbi Gerlitzky was "operating an unpermitted 'Church, Temple or Synagogue' (Chabad Jewish Center Big Island) on the above referenced property . . . . in violation of Chapter 25, of the Hawaii County (Zoning) Code."  Ex. C.  The Planning Department thus ordered the Center to (1) "cease and desist from operating the Chabad Jewish Center Big Island on the subject property" and (2) "[p]ay a civil fine of . . . $1,000.00" by April 17, 2023 or risk incurring "daily fines in the amount of $100.00 per day beginning on April 18, 2023."  Ex. C.

41.    Even though Rabbi Gerlitzky had next to no information about the purportedly proper and improper uses of his home, in characteristic charity and hoping to resolve any concerns quickly and in good faith, Rabbi Gerlitzky quickly acted to assuage the Planning Department's concerns.  On April 17, 2023, Rabbi Gerlitzky notified the Planning Department that he would follow their instructions to "to apply and obtain a Use Permit," Ex. D, and would otherwise "remov[e] our address from [the Center's] website" to alleviate any concerns.  Ex. E.  The County gave Rabbi Gerlitzky until May 31, 2023 to apply for a Use Permit.  Ex. D.

## The Planning Department Denies Rabbi Gerlitzky's Use-Permit Application

42.    On April 20, 2023, Rabbi Gerlitzky followed instructions to apply for a use permit.  Ex. F.  He paid a $500 filing fee.  On the County's request for additional elaboration, he submitted additional information on April 26 with a detailed explanation of his proposed use.

43.    Though he had not previously characterized the Chabad House as a synagogue, Rabbi Gerlitzky and the Center's use permit followed the County's instructions to have the County approve use of the home for a "synagogue" and a "Jewish community center."   Ex. G.   Rabbi Gerlitzky notified the Planning Department that this "orthodox synagogue" would be "the only one of [its] kind" on the Big Island.  *Id.*

44.    Rabbi Gerlitzky and the Center also voluntarily imposed limitations to reduce any potential externalities on his neighbors.  For instance, Rabbi Gerlitzky agreed to ensure his guests, among other things, "[o]bserve all speed limits and rules of the road" and do not block neighbors' driveways.  *Id.*  He also limited the number of visitors, seeking to host on "average 25 people" at his house on "Friday night right after sunset" and on "average 15 people" on "Saturday morning 10 am for [ ] about 4 hours."  *Id.*  He also sought to host "Jewish Holidays a few times a year" where he would host "40-90 people."  *Id.*  During sabbaths and holidays, he noted that the

16

Center's leaders and guests would not "use speakers, microphones and music," limiting noise levels.  *Id.*

45.     On April 28, 2023, the County rejected Rabbi Gerlitzky and the Center's use-permit application.  The email from the County said that the County needed "more detailed" information.  Ex. H.  It also informed Rabbi Gerlitzky that the use permit application would just be the beginning of the required permitting process.  To have religious meetings at his home, the County said, would "require building permits and compliance with current building, fire, health codes."  *Id.*  The County said that permitting "the use you've described" might require "upgrading the facility to commercial type standards," which could include upgrading the "wastewater system," adding "water suppression to meet fire code," and making the house ADA-compliant.  *Id.*  According to the County, the upgrades would be the start of the process—the County advised Rabbi Gerlitzky to "meet with staff at relevant agencies (Department of Health, Building Division, Fire Department, etc) to gain a realistic understanding of what will be required, prior to applying for the Use Permit."  *Id.*  Once Rabbi Gerlitzky and the Center undertook this substantial task, Rabbi Gerlitzky could present plans for upgrades to the County.  And then the Planning Department would ***consider*** a use permit—no guarantee.

46.     On May 16, 2023, Rabbi Gerlitzky asked for a meeting with Defendant Kern to discuss his options.  Rabbi Gerlitzky stated his belief that his situation

17

shouldn't require extensive permitting because "we just want to have people over for meals and prayers." Ex. I. Defendant Kern ignored this request.

### The Planning Department Assesses Flat and Daily Fines

47.    Instead of meeting with Rabbi Gerlitzky to amicably resolve any zoning issues, on July 3, 2023, the Planning Department sent the Center a Notice of Daily Fines, indicating that fines had begun to accrue on June 1, 2023, and so far amounted to $4,300 (based on an initial fine of $1,000 and plus daily fines of $100 for 33 days, totaling an additional $3,300). Ex. J.

48.    On July 11, Rabbi Gerlitzky called the Planning Department, stating that the Center shouldn't be fined, because the Center had ceased operations at his home and he only invited people as private individuals to his home. The County rejected those explanations, noting that neighbors were complaining about the vehicles of Rabbi Gerlitzky's visitors.

49.    On July 24, 2023, the Center received another Notice of Daily Fines letter from the Planning Department. Ex. K. The letter asserted that the Center was "using the property as a Church, Temple, or Synagogue" and demanded that the Center not use the property "to conduct *any* services/gathering at the location since you do not have a use permit." *Id.* at 1 (emphasis added). The notice also imposed a schedule of increasing fines:

| DAILY FINES FOR VIOLATION | FIRST 3 MOS. | AFTER 3RD MO. | AFTER 6TH MO. | AFTER 9TH MO. |
|---|---|---|---|---|
| Initial violation | $100 | $200 | $300 | $500 |
| First Recurrence | $200 | $300 | $400 | $500 |
| Second Recurrence | $300 | $400 | $500 | |
| Third Recurrence | $400 | $500 | | |

50.     The letter stated that the Center had no right to "appeal this Daily Fines Letter" and that the assessed fines constituted a "lien upon the subject property upon filing with the Bureau of Conveyances." Ex. K at 3. The letter said that, to date, the Center had incurred $6,400 in fines. Rabbi Gerlitzky's counsel reached out to the County twice, once on September 11, 2023, and again on November 3, in an effort to set up a meeting to seek an amicable resolution of the alleged zoning violations. On both occasions, the County rebuffed Rabbi Gerlitzky's overtures, advising the Rabbi and the Center to instead continue the futile use permit application process.

51.     As of the date of this filing, the Center has incurred approximately $50,600 in fines. Given the County's escalation schedule, the Center—which took in about $200,000 in revenue last year—will owe $207,600 by the end of 2024.

## CLAIMS FOR RELIEF

## COUNT I

**(Declaratory, Injunctive, and Monetary Relief Based on the Hawaiʻi County Code's Facial Violation of the First Amendment)**

52.     Plaintiffs re-allege and incorporate herein by reference paragraphs 1 through 51.

53.     Pursuant to 42 U.S.C. § 1983, the Center and Rabbi Gerlitzky seek to enforce their First Amendment free-exercise rights against the County and Defendant Kern.

54.     By fining the Center while allowing comparable secular gatherings to occur in the same area, the County's actions substantially burden the Center and Rabbi Gerlitzky's religious free exercise in practice in a way that is not neutral or generally applicable.  And the County Code is not neutral on its face, either.  Hawaiʻi County Code § 25-5-3(a) lists uses that "shall be permitted" in a single-family residential district, which includes "*[m]eeting facilities*" that can operate "in [a] RS district" sans any restriction.   (Emphasis added).   *See also* § 25-5-3(a)(3) ("Community buildings"), (a)(8) ("Home occupations").   Conversely, Hawaiʻi County Code § 25-2-61(a) permits "[c]hurches, temples and synagogues" to operate in a RS district "only if a use permit is obtained for the use from the commission." And, critically, use permits are required not only for "[c]hurches, temples and synagogues" themselves but also for the "***meeting facilities*** for churches, temples,

synagogues and other such institutions[] in RS . . . districts." § 25-2-61(a)(3) (emphasis added).

55.     The First Amendment prohibits such favoritism for only those meeting facilities unconnected from a religious institution.  By imposing a heightened burden on the meeting facilities of religious institutions, Hawai'i County Code §§ 25-5-3 & 25-2-61 violate the Free Exercise clause of the First Amendment of the United States Constitution, as incorporated against the states through the Fourteenth Amendment. The County has also not acted neutrally in practice, by penalizing Rabbi Gerlitzky's small gatherings while allowing comparable secular gatherings in the same zoning district.

56.     Since this provision discriminates against religion and the County is not neutral towards religion in practice, the County's actions are subject to strict scrutiny where, as here, they substantially burden the Center and Rabbi Gerlitzky's sincerely held beliefs and religious free exercise.  Strict scrutiny requires the County to have a compelling governmental interest for fining the Center for small meetings, prayers, and celebrations held in Rabbi Gerlitzky's home, and this policy must be the least restrictive means for achieving that end. *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531-32 (1993).

57.     The imposition of daily fines based on this facially discriminatory code substantially burdens the Center and Rabbi Gerlitzky's free exercise of religion.  It

does so without using the least restrictive means of achieving a compelling governmental interest.

58.     The Center and Rabbi Gerlitzky therefore seek entry of a judgment declaring that Hawaiʻi County Code §§ 25-5-3 & 25-2-61 violate the First Amendment on their face and enjoining the County and Defendant Kern from enforcing Hawaiʻi County Code §§ 25-5-3 & 25-2-61 against religious meetings, prayers, and celebrations in the Rabbi's home.

59.     The Center and Rabbi Gerlitzky also seek monetary damages and any other relief to which they are entitled, including attorney fees and costs in connection with bringing and pursuing this action.

## COUNT II

**(Declaratory, Injunctive, and Monetary Relief Based on the Hawaiʻi County Code's Facial Violation of the Hawaiʻi Constitution)**

60.     Plaintiffs re-allege and incorporate herein by reference paragraphs 1 through 51.

61.     The Center and Rabbi Gerlitzky seek to enforce their free-exercise rights under the Hawaiʻi Constitution against the County and Defendant Kern.

62.     Hawaiʻi County Code § 25-5-3(a)(9) allows "*[m]eeting facilities*" to operate "in [a] RS district" sans any restriction.  Conversely, Hawaiʻi County Code § 25-2-61(b)(3) permits "[c]hurches, temples and synagogues" to operate in a RS district "only if a use permit is obtained for use."  And, critically, use permits are

required not only for "[c]hurches, temples and synagogues" themselves but also for the "***meeting facilities*** for churches, temples, synagogues and other such institutions[] in RS . . . districts." H.C.C. § 25-2-61(a)(3) (emphasis added).  In other words, in residential use districts in Hawaiʻi County, meeting facilities are permissible ***so long as they're secular***.

63.    By imposing a heightened burden on the meeting facilities of religious institutions, Hawaiʻi County Code §§ 25-5-3 & 25-2-61 violate the Free Exercise clause of the First Amendment of the United States Constitution, as incorporated by the Preamble of the Hawaiʻi Constitution.  It also violates the free exercise clause of the Hawaii Constitution, Haw. Const. art. I, § 4.

64.    Hawaiʻi constitutional law also requires that where "a particular law imposes a burden upon the free exercise of religion, judicial scrutiny is triggered, [and] the regulation must be justified with a compelling government interest, and the government has the burden of demonstrating that no alternative forms of regulation would combat such abuses without infringing First Amendment rights."  *State v. Armitage*, 132 Haw. 36, 59 (2014) (cleaned up).

65.    The imposition of daily fines based on this facially discriminatory code substantially burdens the Center and Rabbi Gerlitzky's free exercise of religion.  It does so without using the least restrictive means of achieving a compelling governmental interest.

23

66.    The Center and Rabbi Gerlitzky therefore seek entry of a judgment declaring that Hawai'i County Code §§ 25-5-3 & 25-2-61 violate the Hawai'i Constitution on their face and enjoining the County and Defendant Kern from enforcing Hawai'i County Code §§ 25-5-3 & 25-2-61 against religious meetings, prayers, and celebrations.

67.    The Center and Rabbi Gerlitzky also seek monetary damages and any other relief to which they are entitled, including attorney fees and costs in connection with bringing and pursuing this action.

## COUNT III

**(Defendants' Policy or Practice of Prohibiting Jewish Gatherings in Residential Use Districts Violates the First Amendment As Applied)**

68.    Plaintiffs re-allege and incorporate herein by reference paragraphs 1 through 51.

69.    Pursuant to 42 U.S.C. § 1983, the Center and Rabbi Gerlitzky seek to enforce their First Amendment free-exercise rights against the County and Defendant Kern.

70.    It is the County's policy and practice to prosecute supposed violations of Hawai'i County Code § 25-2-61 only when the violating party hosts Jewish gatherings.  The County's enforcement decisions are neither neutral nor generally applicable, as other religious and non-religious meetings of comparable size have occurred unmolested in the zoning district of Rabbi Gerlitzky's home.  The County's

policy of selective enforcement against the Plaintiffs, if left unchecked, will effectively shutter one of the now only two orthodox Jewish gathering spaces on the Big Island. This policy is enabled by the County's practice of ratcheting up recurring fines against the Plaintiffs.

71.     Defendant Kern likewise has unreasonably imposed a substantial burden on Plaintiffs' free-exercise rights with no compelling justification by (1) singling out the Center's religious events for prosecution and (2) imposing recurring fines regardless of the Center's actions.

72.     Plaintiffs therefore seek entry of a judgment declaring that Rabbi Gerlitzky and the Center may use Rabbi Gerlitzky's home to host religious meetings, prayers, and celebrations, even if on behalf of the Chabad Jewish Center of the Big Island.

73.     The Center and Rabbi Gerlitzky also seek monetary damages and any other relief to which they are entitled, including attorney fees and costs in connection with bringing and pursuing this action.

## COUNT IV

### (Defendants' Policy or Practice of Prohibiting Jewish Gatherings in Residential Use Districts Violates the Hawai'i Constitution As Applied)

74.     Plaintiffs re-allege and incorporate herein by reference paragraphs 1 through 51.

75.    The Center and Rabbi Gerlitzky seek to enforce their free-exercise rights under the Hawaiʻi Constitution against the County and Defendant Kern.

76.    It is the County's policy and practice to prosecute supposed violations of Hawaiʻi County Code § 25-2-61 only when the violating party hosts Jewish gatherings.  The County's enforcement decisions are neither neutral nor generally applicable, as other religious and non-religious meetings of comparable size have occurred unmolested in the zoning district of Rabbi Gerlitzky's home.

77.    Defendant Kern likewise has unreasonably imposed a substantial burden on Plaintiffs' free-exercise rights with no compelling justification by (1) singling out the Center's religious meetings, prayers, and celebrations for prosecution and (2) imposing recurring fines regardless of the Center's actions.

78.    Plaintiffs therefore seek entry of a judgment declaring that Rabbi Gerlitzky and the Center may use Rabbi Gerlitzky's home for meetings, prayers, and celebrations, even if on behalf of the Chabad Jewish Center of the Big Island.

79.    The Center and Rabbi Gerlitzky also seek monetary damages and any other relief to which they are entitled, including attorney fees and costs in connection with bringing and pursuing this action.

## COUNT V

## (The County's Zoning Code Violates RLUIPA's Equal-Terms Provision on its Face)

80.   Plaintiffs re-allege and incorporate herein by reference paragraphs 1 through 51.

81.   RLUIPA prevents governments from "impos[ing] or implement[ing] a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution."   42 U.S.C. § 2000cc(b)(1).

82.   The County's zoning ordinance disfavors religious activities and organizations on its face and thus violates RLUIPA's equal-terms provision.

83.   Plaintiffs therefore seek a declaration that the County's zoning ordinance violates RLUIPA on its face and a judgment enjoining the County from enforcing the County's zoning ordinance restricting meetings, prayers, and celebrations of religious organizations in residential-use districts.

84.   The Center and Rabbi Gerlitzky also seek monetary damages and any other relief to which they are entitled, including attorney fees and costs in connection with bringing and pursuing this action.

## COUNT VI

### (The County's Zoning Code Violates RLUIPA's Equal-Terms Provision As Applied)

85.     Plaintiffs re-allege and incorporate herein by reference paragraphs 1 through 51.

86.     RLUIPA prevents governments from "impos[ing] or implement[ing] a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution."   42 U.S.C. § 2000cc(b)(1).

87.      The County's zoning ordinance treats Plaintiffs on less than equal terms with nonreligious assemblies or institutions and thus violates RLUIPA's equal-terms provision as applied against Plaintiffs.

88.     Plaintiffs therefore seek entry of a judgment declaring that Rabbi Gerlitzky and the Center may use Rabbi Gerlitzky's home to host religious meetings, prayers, and celebrations, even if on behalf of the Chabad Jewish Center of the Big Island.

89.     The Center and Rabbi Gerlitzky also seek monetary damages and any other relief to which they are entitled, including attorney fees and costs in connection with bringing and pursuing this action.

## COUNT VII

**(Defendants' Policy or Practice of Prohibiting Jewish Gatherings in Residential Use Districts Substantially Burdens Plaintiffs' RLUIPA Rights)**

90.    Plaintiffs re-allege and incorporate herein by reference paragraphs 1 through 51.

91.    RLUIPA prohibits any land use regulation "that imposes a substantial burden on the religious exercise of a . . . religious assembly or institution" unless the government demonstrates the regulation "is in furtherance of a compelling governmental interest; and is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc(a)(1).

92.    The Center and Rabbi Gerlitzky seek to enforce their RLUIPA free-exercise rights against the County and Defendant Kern who have substantially burdened those rights.

93.    It is the County's policy and practice to prosecute supposed violations of Hawai'i County Code § 25-2-61 only when the violating party hosts Jewish gatherings.  The County's enforcement decisions are neither neutral nor generally applicable, as other religious and non-religious meetings of comparable size have occurred unmolested in the zoning district of Rabbi Gerlitzky's home.

94.    Defendant Kern, in his official capacity, has unreasonably imposed a substantial burden on Plaintiffs' free-exercise rights with no compelling justification

by (1) singling out the Center's religious events for prosecution and (2) imposing recurring fines regardless of the Center's actions.

95.    Plaintiffs therefore seek to enjoin Defendants from prohibiting the Center from using Rabbi Gerlitzky's home as a meeting facility.

96.    The Center and Rabbi Gerlitzky also seek monetary damages against the County and any other relief to which they are entitled, including attorney fees and costs in connection with bringing and pursuing this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court:

A.    Declare that Hawai'i County Code §§ 25-5-3 & 25-2-61 facially violate the First Amendment, Hawai'i Constitution, and RLUIPA by allowing secular meetings or celebrations without a use permit and prohibiting religious meetings, prayers, and celebrations without a use permit.

B.    Declare that Hawai'i County Code §§ 25-5-3 & 25-2-61 violate the First Amendment, Hawai'i Constitution, and RLUIPA by allowing secular meetings or celebrations without a use permit and prohibiting Plaintiffs from holding religious meetings, prayers, and celebrations without a use permit.

C.    Preliminarily and permanently enjoin Defendants from enforcing §§ 25-5-3 & 25-2-61 by prohibiting, fining, or otherwise curtailing religious meetings absent a use permit.

D. Preliminarily and permanently enjoin Defendants from enforcing §§ 25-5-3 & 25-2-61 by prohibiting, fining, or otherwise curtailing Plaintiffs from holding religious meetings absent a use permit.

E. Award Plaintiffs monetary damages.

F. Award Plaintiffs nominal damages.

G. Award costs and reasonable attorney fees pursuant 42 U.S.C. § 1988 or any other law; and

H. Award such other relief as this Court may deem just and appropriate.

Dated: February 13, 2024

Respectfully Submitted,

_/s/ Robert Christensen_

Prerak Shah (pro hac vice pending)
GIBSON, DUNN & CRUTCHER LLP
811 Main St., Suite 3000
Houston, TX 77002
Tel.: (346) 718-6600
Fax: (346) 718-6620
_PShah@gibsondunn.com_

Robert Christensen
Attorney at Law
P.O. Box 389
Kilauea, HI 96754
Tel.: (808) 431-1160
Fax: (808) 538-7579
_rjc.esq@outlook.com_

Elizabeth A. Kiernan (pro hac vice pending)
Brian Sanders (pro hac vice pending)
Zachary Carstens (pro hac vice pending)
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
Tel.: (214) 698-3100
_EKiernan@gibsondunn.com_
_BSanders@gibsondunn.com_
_ZCarstens@gibsondunn.com_

David J. Hacker (pro hac vice pending)
Jeremiah G. Dys (pro hac vice pending)
Ryan Gardner (pro hac vice pending)
FIRST LIBERTY INSTITUTE
2001 West Plano Parkway
Suite 1600
Plano, TX 75075
Tel.: (972) 941-4444
_DHacker@firstliberty.org_
_JDys@firstliberty.org_
_RGardner@firstliberty.org_

Nicholas B. Venable (pro hac vice pending)
GIBSON, DUNN & CRUTCHER LLP
1801 California Street, Suite 4200
Denver, CO 80202
Tel.: (303) 298-5700
_NVenable@gibsondunn.com_

Lael Weinberger∗ (pro hac vice pending)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036
Tel.: (202) 955-8500
_LWeinberger@gibsondunn.com_

_Attorneys for Plaintiffs Chabad Jewish Center of the Big Island and_
_Rabbi Levi Gerlitzky_

---

∗ Admitted only in California; practicing under the supervision of members of the District of Columbia Bar under D.C. Ct. App. R. 49.